ORIGINAL

cfj NOO
ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
FEB 28 2001
CLERK, U.S. DISTRICT COURT
By ______ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MCKINNEY BB, L.P. | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3-00CV1762-M |
| | § | |
| U.S. REALTY ADVISORS, L.L.C., | § | |
| Defendant. | § | |

**PLAINTIFF'S AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND**

McKinney BB, L.P. ("McKinney BB"), Plaintiff, files this Amended Complaint For Declaratory Judgment and Jury Demand and petitions the Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, for a declaration of the rights, status, and other legal relations between McKinney BB and U.S. Realty Advisors, LLC ("U.S. Realty"), Defendant, under a certain contract known as the Advisor Contract that was entered into by the parties on September 13, 1999.

Specifically, Plaintiff McKinney BB requests the Court to declare that U.S. Realty is not entitled to any fees associated with the Contract between McKinney BB and U.S. Realty. Moreover, Plaintiff requests the Court to declare that U.S. Realty is precluded from bringing or maintaining an action for the collection of compensation for the performance of brokerage services because U.S. Realty is not licensed by the Texas Real Estate Commission to act in the capacity of a real estate broker or salesperson.



18

I.

**JURISDICTION**

1. Plaintiff McKinney BB is a limited partnership organized and existing under the laws of the State of Texas, having its principal place of business in Dallas, Texas.

2. Defendant U.S. Realty is a limited liability corporation organized and existing under the laws of the State of New York.

3. This Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiff McKinney BB and Defendant U.S. Realty are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This lawsuit arises out of U.S. Realty's contract which was to be performed in whole or in part in the state of Texas.

5. U.S. Realty availed itself of the rights and benefits of the State of Texas.

6. U.S. Realty has appeared. Thus, service can be made by serving its counsel of record, Susan Abbott Schwartz, at Henslee, Fowler, Hepworth & Schwartz, 6688 N. Central Expressway, Suite 850, Dallas, Texas 75206 or Nancy Ledy-Gurren at Ledy-Gurren & Blumenstock, LLP, 150 East 52nd Street, 30th Floor, New York, New York 10022.

II.

**VENUE**

7. Venue is proper in this county because all or a substantial part of the events or omissions giving rise to this claim occurred in this county. 28 U.S.C. § 1391(a) (2).

## III.

## FACTS

8. On or about September 13, 1999, Keystone Strategies, L.P., acting as agent to McKinney BB, the fee owner of the Blockbuster Distribution Center located in McKinney, Texas, entered into a contract with U.S. Realty (the "Advisor Contract"). Attached as *Exhibit "A"* is a true and correct copy of the Advisor Contract.

9. The Advisor Contract was extended by written agreement on four occasions. Attached as *Exhibits "B-E"* are true and correct copies of the Extensions to the Advisor Contract.

10. There exists a substantial dispute and controversy between McKinney BB and U.S. Realty over whether U.S. Realty is entitled to any fees under the Advisor Contract.

11. U.S. Realty did not fulfill the conditions precedent to payment of compensation under the Advisor Contract.

12. U.S. Realty did not perform its obligations under the Advisor Contract.

13. Additionally, no sale was consummated within 180 days following the expiration of the term of the Advisor Contract (as extended).

14. Further, there were no oral agreements to modify the Advisor Contract, and no oral or written agreements to modify or waive the 180 day condition precedent.

15. Therefore, because U.S. Realty did not fulfill the conditions in the Advisor Contract, because the 180 day condition was neither waived nor modified, because U.S. Realty did not perform its obligations, and also because no sale was consummated within 180 days after the termination of the Advisor Contract, U.S. Realty is not entitled to any fees under the Advisor Contract.

16. Moreover, by virtue of the above and foregoing allegations, there exists a substantial dispute and controversy between McKinney BB and U.S. Realty as to whether U.S. Realty can bring or maintain a suit for the collection of compensation for the performance of brokerage services.

17. Pursuant to the Real Estate License Act, a person is precluded from bringing or maintaining an action for the collection of compensation for the performance in Texas of any brokerage services without alleging and proving that the person or company performing the brokerage services was a duly licensed real estate broker or salesperson at the time that the alleged services were commenced. TEX. REV. CIV. STAT. ANN. art. 6573a §20a (Vernon's Ann. Supp. 2001).

18. U.S. Realty contracted with McKinney BB to procure or assist in the procuring of prospective purchasers of the Property.

19. The scope of U.S. Realty's services included structuring the proposed sale of the Property with the purchaser and actively participating in the entire negotiation and closing process.

20. These services are governed by section 2 of the Real Estate License Act, TEX. REV. CIV. STAT. art. 6573a § 2, and constitute brokerage services which require a license from the Texas Real Estate Commission.

21. Despite this statutory requirement, neither U.S. Realty nor its affiliate company was licensed by the Texas Real Estate Commission to perform brokerage services in this state.

22. Therefore, pursuant to TEX. REV. CIV. STAT. ANN. art. 6573a §20, U.S. Realty is precluded from bringing or maintaining an action for the collection of compensation for the alleged performance of brokerage services.

23. Moreover, any alleged oral modification or waiver of the Advisor Contract is unenforceable under section 28 of the Real Estate License Act. , TEX. REV. CIV. STAT. art. 6573a § 28 and the statute of frauds.

24. Any alleged oral modification or waiver of the Advisor Contract is barred for lack of consideration.

## IV.

## CLAIMS AND CAUSES OF ACTON

### Count 1 - Suit for Declaratory Relief

25. McKinney BB re-alleges and incorporates herein by reference all the allegations of paragraph 1-24, above.

26. McKinney BB requests that this Court render a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, construing the Advisor Contract and declaring that U.S. Realty is not entitled to any fees associated with the Advisor Contract because it did not fulfill the conditions precedent to receiving compensation.

27. McKinney BB requests that this Court render a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, construing the Advisor Contract and declaring that U.S. Realty is not entitled to any fees associated with the Advisor Contract because a sale was not consummated within 180 days after the expiration of the Advisor Contract, as required by the Advisor Contract.

28. McKinney BB requests that this Court render a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, construing the Advisor Contract and declaring that there was no oral or written agreement to waive, change or modify the 180 day requirement.

29. McKinney BB requests that this Court render a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, construing the Advisor Contract and declaring that U.S. Realty is not entitled to any fees associated with the Advisor Contract because it did not perform its obligations under the Contract.

30. McKinney BB requests that this Court render a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, construing the Advisor Contract and declaring that any alleged oral modification of the Advisor Contract is unenforceable under the statute of frauds.

31. McKinney BB requests that this Court render a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, construing the Advisor Contract and declaring that any alleged oral modification of the Advisor Contract is unenforceable under the Real Estate License Act.

32. McKinney BB requests that this Court render a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, construing the Advisor Contract and declaring that any alleged oral modification of the Advisor Contract is barred for lack of consideration.

**Count 2 - Suit for Declaratory Relief**

33. McKinney BB re-alleges and incorporates herein by reference all the allegations of paragraphs 1-32, above.

34. McKinney BB requests that this Court render a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, declaring, pursuant to the Texas Real Estate License Act, TEX. REV. CIV. STAT. ANN. art. 6573a § 20, that U.S. Realty is precluded

from bringing or maintaining an action for the collection of compensation for the performance of brokerage services it contracted to perform for McKinney BB.

35. McKinney BB requests that this Court render a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, declaring that any oral modification of the Advisor Contract is unenforceable under the Texas Real Estate License Act.

**Count 3 - Suit for Breach of Contract**

36. McKinney BB re-alleges and incorporates herein by reference all the allegations of paragraphs 1-35, above.

37. Pursuant the Advisor Contract, U.S. Realty agreed to (1) prepare and revise as necessary financial projections and cash flow analyses for the marketing book; (2) consult with the owner, its counsel and outside professionals in connection with the disposition of the Property; (3) structure the proposed sale of the Property with the purchaser, its lenders, and its investment bankers; and (4) actively participate in the negotiation and closing process.

38. U.S. Realty did not prepare and revise the financial projections and cash flow analyses for the marketing book.

39. Moreover, U.S. Realty did not consult with the owner, its counsel and outside professionals in connection with the disposition of the Property.

40. As a result, U.S. Realty's non-performance of its contractual obligations constitutes a breach of the Advisor Contract.

41. Alternatively, even if the Court finds that U.S. Realty prepared and revised the financial projections and cash flow analyses for the marketing book and consulted with the owner, its counsel and outside professionals in connection with the disposition of the Property, U.S. Realty did not structure the proposed sale of the Property with the purchaser, its lenders,

and its investment bankers. U.S. Realty's non-performance constitutes a breach of the Advisor Contract.

42. Further, U.S. Realty did not actively participate in the entire negotiation and closing process. As a result, U.S. Realty's non-performance of its contractual obligations constitutes a breach of the Advisor Contract.

## V.
## ATTORNEYS' FEES

43. As a result of Defendant's breach, Plaintiff has retained the undersigned counsel. Defendant has breached the terms of the Advisor Contract. Thus, Plaintiff seeks recovery of reasonable attorneys' fees as allowed by Texas Civil Practice & Remedies Code §§ 38.001, *et seq.*

## VI.
## DEMAND FOR JURY TRIAL

44. McKinney BB asserts its rights under the Seventh Amendment to the U.S. Constitution and demands a trial by jury on all issues, in accordance with Federal Rule of Civil Procedure 38.

## VII.

## REQUEST FOR RELIEF

45. McKinney BB respectfully requests this Court to enter judgment in favor of McKinney BB declaring that U.S. Realty is not entitled to any fees with regards to the Advisor Contract, declaring that U.S. Realty is precluded from bringing or maintaining an action for the recovery of compensation for the performance of brokerage services, and finding that U.S. Realty breached the terms of the Advisor Contract. McKinney BB further requests that this

Court award McKinney BB its attorney's fees, court costs and expenses in bringing this action; and for other and further relief in law and in equity to which McKinney BB is justly entitled.

Respectfully submitted,

Carmen D. Pearson

Elizabeth E. Mack
State Bar No. 12761050
Carmen D. Pearson
State Bar No. 24013305
Locke Liddell & Sapp LLP
2200 Ross Avenue, Suite 2200
Dallas, TX 75201
(214) 740-8000
(214) 740-8800 (Telecopier)

**ATTORNEYS FOR PLAINTIFF MCKINNEY BB, L.P.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the following document was served on the following counsel of record via certified mail, return receipt requested, on the 28th day of February, 2001.

Susan Abbott Schwartz
Henslee, Fowler, Hepworth & Schwartz, P.L.L.C.
6688 North Central Expressway
Suite 850
Dallas, Texas 75206

Nancy Ledy-Gurren
Ledy-Gurren & Blumenstock, L.L.P.
150 East 52nd Street, 30th Floor
New York, NY 10022

Carmen D. Pearson
Carmen D. Pearson

EXHIBIT
PENGAD-Bayonne, NJ
A

U. S. REALTY ADVISORS, LLC

1370 Avenue of the Americas
29th Floor
New York NY 10019
phone 212.581.4540
fax 212.581.4950

September 13, 1999

Marilyn Acheson
Managing Director
Keystone Strategies, L.P.
2515 McKinney Avenue
Suite 1650
Dallas, TX 75201

Re: Blockbuster Distribution Center Located in McKinney, TX

Dear Marilyn:

This will confirm that Keystone Strategies, L.P. acting as agent to McKinney BB, L.P. (the "Owner"), the fee owner of the Blockbuster Distribution Center located in McKinney, TX (the "Property"), has retained U. S. Realty Advisors, LLC (the "Advisor") to act as exclusive disposition advisor with respect to the sale of the Property. In addition, this letter identifies the resources to be utilized and specifies the compensation for the assignment.

I <u>SCOPE OF SERVICES</u>

Advisor will (i) prepare a financial/business analysis of the Owner's interests as fee owner of the Property; (ii) have the exclusive right to sell the Property on terms acceptable to the Owner in its sole discretion; and (iii) generally act as Owner's disposition advisor.

The foregoing services will include:

(i) Prepare and revise as necessary financial projections and cash flow analyses for marketing book;

(ii) Consultation with the Owner, its counsel and outside professionals in connection with the disposition of the Property;

(iii) Structuring the proposed sale with the purchaser, its lenders, investment bankers, etc;

(iv) Active participation in the entire negotiation and closing process.

II RESOURCES

Laurie A. Hawkes will act as lead disposition consultant. Matthew Pellar of U. S. Realty Advisors, LLC will assist with the financial and market analysis and due diligence. Other U. S. Realty Advisors, LLC professionals will be called upon as appropriate.

III COMPENSATION

Owner agrees to pay to Advisor a fee equal to 1% of the gross sale price, payable by wire transfer of immediately available funds as, if and when the sale closes.

IV REIMBURSABLE EXPENSES

Advisor will be responsible for all of Advisor's out of pocket and direct miscellaneous expenses, including by not limited to travel expenses, printing and production charges, etc. (the "Expenses"). Owner will provide to Advisor photographs of the Property to be used in marketing the Property.

V INFORMATION

Owner agrees to furnish Advisor with such information about the Property (the "Information") as Advisor reasonably requests and is available to Owner. Owner represents and warrants to Advisor that to its knowledge all Information will be accurate and complete in all material respects at the time it is furnished and agrees to advise Advisor of all developments materially affecting Owner and the Property, or the accuracy of Information previously furnished to Advisor. Notwithstanding the foregoing, Owner shall have no liability to any purchaser or prospective purchaser for information supplied except to the extent Owner assumes such liability in a purchase and sale agreement executed with such party. Owner agrees that it will consult with Advisor with respect to the "disclaimers of liability" language to be included in any purchase and sale agreement and, to the maximum extent possible, incorporate the suggestions which Advisor makes in that regard. Owner recognizes and confirms that Advisor (i) will be relying solely on Information and other information available from generally recognized public sources in performing the services contemplated hereunder, (ii) will not independently verify the accuracy or completeness thereof and (iv) will make appropriate disclaimers consistent with the foregoing.

VI. INDEMNIFICATION

Owner agrees to indemnify Advisor, its affiliates and their respective officers, directors, employees, agents and representatives (each an "Indemnitee") against any losses, claims, damages or liabilities, together with related legal expenses, as incurred, to which Advisor or such Indemnitee becomes subject insofar as they arise out of any untrue statement or alleged untrue statement of any material fact contained in any Information or any information approved by Owner in writing. Owner will endeavor to review and comment on or approve information

submitted to it by Advisor within ten (10) business days; however, its failure to do so within such time period will not be deemed to be an approval of such information.

Advisor agrees to indemnify Owner, its affiliates and their respective officers, directors, employees, agents, and representatives (each a "Seller Indemnitee") against any losses, claims, damages or liabilities, together with related legal expenses, as incurred, to which a Seller Indemnitee becomes subject in so far as they arise out of:

(i) Any misrepresentation or failure by Advisor or Indemnitee to disclose to a prospective purchaser material information regarding the Property actually known to Advisor; provided, however, this indemnity shall be void and of no force and effect with respect to a claim brought by a purchaser under a purchase and sale agreement unless the agreement of purchase and sale between Owner and the purchaser contains a provision disclaiming expressly all representations and warranties except those set forth in such agreement of purchase and sale.

(ii) Any material adverse fact known by Advisor relating to any prospective buyer that Advisor fails to promptly disclose to Owner.

Advisors liability under the foregoing indemnities shall not exceed the amount of any compensation actually paid hereunder except in the case of Advisors bad faith, gross negligence or willful misconduct, in which event Advisors liability shall not exceed $350,000 regardless of whether a fee is due and paid hereunder.

The provisions of this section shall survive the expiration of the term of this agreement.

VII. CONFIDENTIALITY

In connection with the activities described in the foregoing paragraphs, certain oral and written information of a non-public confidential or proprietary nature (collectively "confidential data") may be delivered to Advisor by Owner. For purposes hereof, confidential data shall not include any oral or written information that is a matter of public record or is provided from sources generally available to the public. Advisor agrees that confidential data will be used solely for the purpose of performing the above-described services and Advisor is authorized to disclose such information to prospective purchasers, their agents, advisors and financiers. Confidential data will be held strictly confidential and all of Advisor employees and agents will be advised of its nature. All confidential data that is delivered to Advisor will be returned at Owner's request.

VIII. TERM

This Agreement shall have a term of 8 weeks from the date hereof. Notwithstanding any termination of this Agreement, Owner shall recognize Advisor as advisor, and compensate Advisor in accordance with paragraph III, in connection with all prospective purchasers identified by written notice to Owner, delivered within ten days of the termination and which result in the sale thereafter being consummated to any such purchaser or its designee within 180 days following the expiration of the term hereof. Prospective purchasers identified by Advisor

pursuant to this section will include only parties with whom Advisor has had substantial contacts in a bonafide effort to sell the Property prior to the end of the term hereof.

IX. MISCELLANEOUS

(i) Neither this Agreement nor any of the rights and/or duties of Advisor hereunder may be assigned by Advisor without the prior written consent of Owner, which consent may be withheld in its sole and absolute discretion. Nothing herein contained shall prohibit Advisor from working with other advisors or agents in connection with the proposed disposition of the Property provided that any compensation payable to such advisors or agents is payable from the fee payable to Advisor hereunder.

(ii) Nothing contained in this Agreement shall be deemed or construed to require Advisor or its agents to perform the services of attorneys, certified public accountants or other professionals requiring special licenses or make Advisor responsible for the failure of the various professionals hired by the Owner to properly perform or provide their services. Any services hereunder which may require a brokerage license shall be performed by an affiliate of U. S. Realty Advisors, LLC, RH Services Company, Inc., a duly licensed real estate broker in the State of New York, and any and all compensation for such services shall be payable solely to RH Services Company, Inc.

(iii) Advisor is retained by Owner only for the purposes and to the extent set forth in this Agreement, and Advisor' relationship to Owner is that of an independent contractor and not as an agent or employee. Advisor shall not have the right or authority to enter into any contract or agreement binding on Owner.Owner shall have the right to review and approve the offering price and other material economic terms contained in any marketing material, all marketing and sales brochures and materials and a list of all targeted purchasers prior to dissemination of information to the targeted purchasers.

We hope you find this proposal acceptable and look forward to working with you on this assignment. Please sign and return one original of this agreement and retain the other for your files.

Sincerely,

U. S. REALTY ADVISORS, LLC

By: Laurie A. Hawkes

Laurie A. Hawkes
Executive Vice President

Agreed to this 13th day of September, 1999

KEYSTONE STRATEGIES, L.P.

By: Marilyn Y. Acheson

By: Marilyn Acheson
Title: Managing Director

EXHIBIT B

KEYSTONE STRATEGIES

***Delivered via fax***

November 8, 1999

Ms. Laurie A. Hawkes
Executive Vice President
U.S. Realty Advisors, LLC
1370 Avenue of the Americas
29th Floor
New York, NY 10019

Re: Listing Agreement
Blockbuster Distribution Center, McKinney, TX

Dear Ms. Hawkes:

You are hereby advised that, pursuant to the September 13, 1999 agreement engaging U.S. Realty Advisors, LLC to act as exclusive disposition advisor with respect to the sale of the above referenced property, the term of such agreement expires November 9, 1999. Keystone Strategies, LP acting as agent to McKinney BB, L.P. ("Owner"), will extend the agreement for one (1) week through November 16, 1999. Please provide this office with a list of all prospective purchasers that have demonstrated a bona fide effort to acquire the property so that we may evaluate the progress of your sales efforts.

Please sign below indicating your acceptance of this extension and return a copy via facsimile.

Sincerely,

Marilyn Y. Acheson
Managing Director

Agreed to this 9th day of November, 1999

U.S. Realty Advisors, LLC

By: ______________________
Laurie A. Hawkes
Executive Vice President

C: Mr. Rainer Wenz
Mr. J. Mitchell Bell
Mr. Mark DeMattia

2615 McKinney Avenue Suite 1650 LB12 Dallas Texas 75201 Phone 214.303.1456 Fax 214.303.1824 www.kystn.com

EXHIBIT C

KEYSTONE STRATEGIES

*Delivered via fax*

November 17, 1999

Ms. Laurie A. Hawkes
Executive Vice President
U.S. Realty Advisors, LLC
1370 Avenue of the Americas
29th Floor
New York, NY 10019

Re: Listing Agreement
Blockbuster Distribution Center, McKinney, TX

Dear Ms. Hawkes:

You are hereby advised that, pursuant to the September 13, 1999 agreement engaging U.S. Realty Advisors, LLC to act as exclusive disposition advisor with respect to the sale of the above referenced property, the term of such agreement expired November 9, 1999 and was extended through November 16, 1999. Keystone Strategies, LP acting as agent to McKinney BB, L.P. ("Owner"), will extend the agreement for an additional one (1) week through November 23, 1999. Please continue to provide this office with a list of all prospective purchasers that have demonstrated a bona fide effort to acquire the property so that we may evaluate the progress of your sales efforts.

Please sign below indicating your acceptance of this extension and return a copy via facsimile.

Sincerely,

Marilyn Y. Acheson
Managing Director

Agreed to this 17th day of November, 1999

U.S. Realty Advisors, LLC

By: ______________________
Laurie A. Hawkes
Executive Vice President

C: Mr. Rainer Wenz
Mr. J. Mitchell Bell
Mr. Mark DeMattia

EXHIBIT
D

KEYSTONE STRATEGIES

***Delivered via fax***

November 29, 1999

Ms. Laurie A. Hawkes
Executive Vice President
U.S. Realty Advisors, LLC
1370 Avenue of the Americas
29th Floor
New York, NY 10019

Re: Listing Agreement
Blockbuster Distribution Center, McKinney, TX

Dear Ms. Hawkes:

You are hereby advised that, pursuant to the September 13, 1999 agreement engaging U.S. Realty Advisors, LLC to act as exclusive disposition advisor with respect to the sale of the above referenced property, the term of such agreement expired November 9, 1999 and was extended through November 23, 1999. Keystone Strategies, LP acting as agent to McKinney BB, L.P. ("Owner"), will extend the agreement for an additional two (2) weeks through December 7, 1999. Please continue to provide this office with a list of all prospective purchasers that have demonstrated a bona fide effort to acquire the property so that we may evaluate the progress of your sales efforts.

Please sign below indicating your acceptance of this extension and return a copy via facsimile.

Sincerely,

Marilyn Y. Acheson
Managing Director

Agreed to this _____ day of November, 1999

U.S. Realty Advisors, LLC

By:______________________________
Laurie A. Hawkes
Executive Vice President

C: Mr. Rainer Wenz
Mr. J. Mitchell Bell
Mr. Mark DeMattia

2515 McKinney Avenue Suite 1650 LB12 Dallas Texas 75201 Phone 214.303.1455 Fax 214.303 1824 www.kystn.com

EXHIBIT
E

KEYSTONE STRATEGIES

*Delivered via fax*

December 13, 1999

Ms. Laurie A. Hawkes
Executive Vice President
U.S. Realty Advisors, LLC
1370 Avenue of the Americas
29th Floor
New York, NY 10019

Re: Listing Agreement
Blockbuster Distribution Center, McKinney, TX

Dear Ms. Hawkes:

You are hereby advised that, pursuant to the September 13, 1999 agreement engaging U.S. Realty Advisors, LLC to act as exclusive disposition advisor with respect to the sale of the above referenced property, the term of such agreement expired November 9, 1999 and was extended through December 7, 1999. Keystone Strategies, LP, acting as agent to McKinney BB, L.P. ("Owner"), will extend the agreement for an additional two weeks through December 21, 1999. This is a final extension of our engagement. We continue to request an updated list of all prospective purchasers that have demonstrated a bona fide effort to acquire the property.

Please sign below indicating your acceptance of this extension and return a copy via facsimile.

Sincerely,

Marilyn Y. Acheson
Managing Director

Agreed to this 13th day of December, 1999

U.S. Realty Advisors, LLC

By: Laurie A. Hawkes
Laurie A. Hawkes
Executive Vice President

C: Mr. Rainer Wenz
Mr. J. Mitchell Bell
Mr. Mark DeMattia

2316 McKinney Avenue Suite 1650 LB12 Dallas Texas 75201 Phone 214.303.1455 Fax 214.303.1824 www.kystn.com